## FEDERAL UNDERWRITERS EXCHANGE v. PUGH et al.

### No. 2363.

Court of Civil Appeals of Texas. Eastland.

May 21, 1943.

Rehearing Granted Dec. 10, 1943.

Lightfoot, Robertson & Gano, of Fort Worth, for appellant.

Smith & Smith, of Anson, for appellee.

GRISSOM, Justice.

This is a workman's compensation case. John Pugh, a minor, by his next friend, filed suit in the District Court of Young County to set aside the award of the Industrial Accident Board and recover compensation on account of an injury sustained in Young County. The case was by agreement transferred to the District Court of Stephens County and tried there. Judgment was rendered for Pugh and the insurance carrier has appealed.

Appellant's first point presents its contention that since the employee's injury was sustained in Young County the District Court of Stephens County did not have jurisdiction to try the case and the judgment is, therefore, void. Appellee says that the cases cited by appellant to sustain this contention merely hold that the suit must be *filed* in the county where the injury occurred. Appellee contends that after the suit has been filed in the county where the employee was injured the cause may be transferred and tried in another county; that since this cause was transferred by agreement and since everything was agreed to, except the question of the extent of appellee's injuries, the District Court of Stephens County had jurisdiction to try the case. Appellee cites in support of his contention Oilmen's Reciprocal Ass'n v. Youngblood, Tex.Civ. App., 297 S.W. 255; Art. 2169, and Lawler's Workmen's Compensation Law, p. 457. The Youngblood case is directly in point and sustains appellee's contention. The statute and rule cited are the same. They provide: "Upon the written consent of the parties filed with the papers of the cause, the court, by an order entered on the minutes, may transfer the same for trial to the court of any other county having jurisdiction of the subject matter of such suit."

The question to be decided is whether the District Court of Stephens County to which this cause was so transferred had "jurisdiction of the subject matter." The Workmen's Compensation law, Vernon's Ann.Civ.St. Art. 8307, Sec. 5, provides that an interested party who is not willing to abide by the decision of the board shall give notice of such unwillingness and file suit within twenty days thereafter "in the county where the injury occurred * * *." Prior to the enactment of Art. 8307a, it had been definitely determined that if such a suit were filed in a county other than that in which the injury occurred, the court in such county could not transfer the cause to a court in the county in which the injury occurred. The only

authority then possessed by a court in a county other than that in which the injury occurred was to dismiss the case. Art. 8307a, enacted in 1931, provides: " * * * in the event such suit is brought in any county other than the county where the injury occurred, the Court in which same is filed shall, upon ascertaining that it does not have jurisdiction to render judgment upon the merits, transfer the case to the proper Court in the county where the injury occurred." It further provides that when such a case is so transferred it shall be considered as originally filed in the court to which it is transferred. In Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084, 1087, the Supreme Court, in an opinion by Chief Justice Cureton, said:

" * * * where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable. * * *

"The Workmen's Compensation Act having created the rights to be enforced and provided the remedy therefor, each step in the progress of the maturity of a claim from the time of the injury to its final adjudication is a mandatory requirement, necessary to the exercise of jurisdiction by the first and succeeding statutory agencies.

\*   \*   \*   \*   \*

"As to the county where suit to set aside an award may be brought, the statute is clearly mandatory. Revised Statutes, art. 8307, § 5, provides that the suit to set aside the final award of the board 'shall' be brought 'in the county where the injury occurred.' The language used is mandatory, and its purpose evident. Such a suit of necessity involves the fact of the accident, the issue of the injury, and the wages of the claimant; all of which may be established with less expense, trouble, and delay in the county where the injury occurred than in any other county.

"Having in mind the general rule that workmen's compensation acts are to be liberally construed to effectuate their beneficial purpose, there can be no doubt that, when the Legislature specified the county in which a suit to vacate an award should be filed as the county where the accident occurred, the specification was exclusive and intended to be jurisdictional. In fact, the statute itself declares that the rights of the parties are to be determined 'by the provisions of this law.' Besides, in special proceedings not within the common-law jurisdiction, the court's statutory designation of the venue is mandatory and jurisdictional."

On appellee's contention that mere filing of the suit in the county where the injury occurred is all that is required by the statute and that after it has been filed there it may be transferred and tried in a different county, the following statements from said opinion appear to be precisely in point:

"We conclude, therefore, that the above venue provisions are mandatory and jurisdictional, and that *no court, though otherwise competent, has jurisdiction; except one within the territorial limits of the counties designated by the statute.*

\*   \*   \*   \*   \*   \*

"When such a suit is brought to set aside the award, the vitality and finality of the award is therefore suspended, and *its subject-matter withdrawn from* the Board and *all of the courts, except the one in which the suit is filed, and which has complete and exclusive jurisdiction to go to judgment and execute its decisions."* (Italics ours.)

In Federal Surety Co. v. Jetton, Tex. Com.App., 44 S.W.2d 923, 925, Justice Sharp said: "The rights and remedies given by the Workmen's Compensation Act are purely statutory; the statutory provisions as to both are mandatory and exclusive, and must be complied with in all respects; and such compliance is necessary to the exercise of jurisdiction by the first and all succeeding agencies, including the county where the injury occurred, where suit to set aside the award must be brought. Each step toward maturity of compensation claim from time of injury to the final adjudication is a mandatory requirement necessary to the exercise of jurisdiction by each agency provided for by this statute. Application for compensation, final award, timely notice of intention not to abide by the award, and timely suit must concur before jurisdiction of suit to vacate the award attaches. *Suit in the proper court* to set aside an award of the Industrial Accident Board *suspends such award, and its subject-matter* is thereby withdrawn from the board and *from all courts except the one in which the suit is brought."* (Italics ours.)

In Texas Employers' Ins. Ass'n v. Evans, 117 Tex. 113, 123, 298 S.W. 516, 519,

the employee in a workman's compensation case filed suit in Palo Pinto County, where the injury occurred. He alleged, inferentially, that he was injured in Stephens County. After expiration of the time for bringing suit, he amended his petition to show that his injury was received in Palo Pinto County. The main question was whether, under such circumstances, the Palo Pinto County Court had jurisdiction. The Supreme Court in an opinion by Judge Short said: "The county court of Palo Pinto county was the only forum in which the suit could have been commenced and *prosecuted."* (Italics ours.)

In Alpha Pet. Co. v. Terrell et al., 122 Tex. 257, 265, 59 S.W.2d 364, 367, the Supreme Court, in an opinion by Justice Critz, considered a suit to set aside an order of the Railroad Commission, brought under a statute which provided that an interested party "shall have the right to *file* a suit in a court of competent jurisdiction in Travis County, Texas, and not elsewhere, against the Commission * * *." (Italics ours). The suit was instituted in Montgomery County. The Court of said county was held to be without jurisdiction. The court held that the requirement that suit be filed in Travis County was jurisdictional. The court said: "What we hold is that, where the suit is to enforce a right which exists only by operation of the statute, and not under the Constitution or the common law, it does lie within the power of the Legislature to designate a particular court as an exclusive tribunal *to hear and determine* such suit. In such a case where the statute, as this one does, provides that the suit shall be *filed* in a particular court, it demonstrates a conclusive legislative intent to designate such court as the only tribunal where such matter can be *litigated."* (Italics ours.)

See also 1 C.J. 988; 1 C.J.S., Actions, § 5; Oilmen's Reciprocal Ass'n v. Franklin, 116 Tex. 59, 63, 286 S.W. 195; Wilson v. Work, Judge, 122 Tex. 545, 62 S.W.2d 490; Tinkle v. Lumbermen's Reciprocal Ass'n, Tex.Civ.App., 299 S.W. 285.

Similar statutes have been held jurisdictional.

*Suits to annul orders of the Railroad Commission.* Texas Steel Co. v. Ft. Worth & D. C. R. Co., 120 Tex. 597, 40 S. W.2d 78; West Texas Compress & Warehouse Co. v. Panhandle & S. F. R. Co., Tex.Com.App., 15 S.W.2d 558; Alpha Pet. Co. v. Terrell, supra.

*Suits to review action of the Board of Insurance Commissioners Fixing Rates.* Daniel v. Tyrrell & Garth Inv. Co., 127 Tex. 213, 219, 93 S.W.2d 372.

*Proceedings to remove disabilities of a minor.* Cunningham v. Robison, Commissioner, 104 Tex. 227, 136 S.W. 441; Gulf, C. & S. F. R. Co. v. Lemons, Tex.Civ.App., 152 S.W. 1189; Id., 109 Tex. 244, 206 S.W. 75, 5 A.L.R. 943.

*Suits to enjoin sale of specific property under order of sale.* Gohlman, Lester & Co. v. Whittle, 115 Tex. 9, 273 S.W. 806.

*Eminent domain.* Wilbarger County v. Hall, Tex.Com.App., 55 S.W.2d 797.

*Elections.* Calverley v. Shank, 28 Tex. Civ.App. 473, 67 S.W. 434, 436; Adamson, Judge v. Connally, Tex.Civ.App., 112 S.W.2d 287.

*Suits on a sheriff's bond.* Bachus v. Foster, Tex.Com.App., 122 S.W.2d 1058.

■ The record shows that the parties to this suit have done all they can do by agreement to confer jurisdiction upon a court outside of the county in which the employee was injured. If the statute that created the cause of action and provided the procedure for its enforcement conferred exclusive jurisdiction, as we think it did, on a court within the county where the employee was injured, all other courts lacked potential jurisdiction of the subject matter of the suit and jurisdiction could not be conferred on a court outside the county in which the injury occurred, by agreement. In Perkins v. United States F. & G. Co., Tex.Com.App., 299 S.W. 213, 217, the court said: "Parties to an action cannot confer jurisdiction of the subject-matter on the court by consent or estoppel. If the court has no jurisdiction of the subject matter, an agreement would be a nullity and unenforceable." See also Fidelity & Casualty Co. v. Millican, Tex.Civ.App., 115 S.W.2d 464, writ refused; 11 Tex. Jur. 715; Cooper v. United States Fidelity & Guaranty Co., Tex.Com.App., 29 S.W. 2d 971, 973; Pierce v. Foreign Mission Board, Tex.Com.App., 235 S.W. 552, 555; Lumbermen's Reciprocal Ass'n v. Turner, Tex.Civ.App., 296 S.W. 901, 902.

■ We understand the cited opinions of the Supreme Court to hold that a suit to set aside the award of the Industrial Accident Board and recover compensation cannot be tried in any county other than the county in which the employee was injured; that the courts of any other county

do not have jurisdiction of the subject matter of such a suit. We, therefore, hold that the District Court of Stephens County was without jurisdiction to try this case.

The judgment is reversed and the cause ordered transferred to the District Court of Young County.

FUNDERBURK, Justice (dissenting).

Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084, and many decisions following it, leave no escape from the conclusion expressed in the majority opinion to the effect that as to a suit to recover compensation under authority of the Workmen's Compensation Law (V. A. C. S. Arts. 8306–8309a), only courts of the county in which the injury occurs have jurisdiction. Within the necessary meaning of this proposition the word "jurisdiction" is used in the sense of jurisdiction of the subject matter or potential jurisdiction; since under the facts of this case jurisdiction in any other sense would be waived by the consent and agreement of the parties. (Unless otherwise indicated, the use of the word jurisdiction in this opinion will be understood in the same sense.)

Right or wrong, Mingus v. Wadley, if its authoritativeness has not been destroyed or impaired by subsequent decisions of the Supreme Court, is, of course, binding upon this Court. But if later decisions of the Supreme Court, in principle, deny the reasons which constituted the essential foundation of the decision in the earlier case, with the effect that if the later decisions are right the other is wrong, then, in my opinion, when this Court believes the earlier decision to be clearly wrong and the later decisions right, it should not feel in duty bound to follow the wrong decision.

Before proceeding in the attempt to demonstrate that the situation is as above suggested, I desire to say, by way of preliminary, that from my view point, Mingus v. Wadley and decisions deemed inconsistent therewith afford a good illustration of a growing tendency of the courts of this state and perhaps of other jurisdictions to over-emphasize the importance of general similarity in transactions forming the subject of suits and to underrate or minimize the importance of applicable principles of law. The result is that decisions, which ought to be ruled by the same principles, but which tested by such principles are in direct conflict, are distinguished and cited and relied upon as authoritative on no more substantial ground than that one is a suit to remove the disabilities of a minor, another a suit contesting an election, another a suit for divorce, etc.

To state it in the fewest words possible, it was held in Mingus v. Wadley in substance and effect that rights and remedies created by statute are different from rights and remedies "derived from common law," in that when submitted to a court, even a court of general jurisdiction, for adjudication, the proceeding in court is a special proceeding and there exists no presumptions to support the court's jurisdiction when such jurisdiction does not affirmatively appear. The effect of the decision was to affirm the identity of a *special proceeding* and the assertion in court of a right of action existing only by statute.

It may at once be conceded as unquestionably true that the statutory procedure before the Industrial Accident Board up to the conclusion of final action by the Board, constitutes provision for a "special proceeding". "Special proceeding" is a term here used in contradistinction from "action". "An action", it is said in Tex.Jur., "has been defined as ·a *judicial proceeding,* either in law or in equity, to obtain relief at the hands of a court * * * In its broadest sense it includes any and all proceedings taken in *a court of justice* in order to establish or protect a *legal right,* or to determine one or more *issues of litigation,* between contesting parties, *other than special or statutory proceedings."* (Italics ours.) 1 Tex. Jur. p. 608, Sec. 2. The same authority, after stating that the words "action" and "suit" are synonymous and interchangeable continues as follows: "But these terms do not ordinarily extend to * * * [among other things] special statutory proceedings such as an election contest." Id.

In Brown v. Wheelock, 75 Tex. 385, 12 S.W. 111, decided in 1889, the court reviewed a jury charge instructing the jury to the effect that a judgment of a district court (collateral, of course, to the suit being tried) removing the disabilities of a minor was conclusive. The charge was condemned, but only for the reason that the power purportedly conferred by the Statute upon the district court was not *judicial power* authorized by the Constitution. It was held that in order to give any effect to the statute, it was necessary

to construe it as conferring power upon the judge as a commissioner, and not upon the court as a court. In other words, the Court's jurisdiction was limited to *actions* or *suits* and the removal of a minor's disability was not the subject of an *action* or *suit*. At that time the jurisdiction of a district court was completely defined by the Constitution, with no power of the Legislature to extend or limit it. Const. 1876, Art. 5, Sec. 8. Any rights not within the Constitutional specifications of the jurisdiction of a district court were not the subject of actions or suits. At that time district courts had no jurisdiction of a proceeding to remove the disability of a minor, or of an election contest or of any other proceeding authorized by Statute, the rights arising from which were not of a nature within the Constitutional specifications of legal or equitable rights and the subject of actions or suits. The court was confronted with the alternatives of striking down the statute as ineffective leaving no provision for the removal of a minor's disability, or of construing the purported action authorized by the statute, as not an action but a special proceeding before a Commissioner.

But when, in 1911, the Supreme Court came to consider the case of Cunningham v. Robison, 104 Tex. 227, 136 S.W. 441, the situation had entirely changed. Said article and section of the Constitution had in 1891 been amended, Vernon's Ann.St. so as greatly to extend the jurisdiction of district courts. District courts had thereby been given jurisdiction "of contested elections." District courts had by said amendment been given "*general* original jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution." (Italics ours.) Further, said Amendment declared that district courts should have "such other jurisdiction, *original* and appellate, *as may be provided by law.*" (Italics ours.) Thus does it clearly appear that what before said Amendment were necessarily special proceedings were by the Amendment converted into *actions* or at least became possessed of the same attributes as actions. Under subsequent decisions as will be shown, said amendment abolished any theretofore existing distinction between rights and remedies created by Statute and rights and remedies "derived from the common law", as to whether they were classifiable as the subject of *actions* or *special proceedings.*

To my mind it is perfectly evident that when the court in Cunningham v. Robison, supra, came to consider again a collateral attack upon a judgment of a district court removing the disabilities of minority, it must have entirely overlooked the important changes wrought by said Constitutional Amendment. Otherwise, it seems incredable that the court, citing Brown v. Wheelock, supra, as authority, should have held as it did that a judgment of the district court removing the disability of a minor, was void and subject to collateral attack, not from any affirmative showing by the record of any lack of jurisdiction, but simply because it did not affirmatively appear that the minor was a resident of the county in which the action or proceeding was brought. Before said Constitutional Amendment, the Supreme Court could not have answered as it did in Legate v. Legate, 87 Tex. 248, 28 S.W. 281, that a habeas corpus proceeding (other than in a criminal case) "must be classed as a civil case." Before said amendment the District Court had no more jurisdiction of such a proceeding than it had of election contests or of proceedings for removal of the disabilities of a minor. In principle Legate v. Legate invalidated Brown v. Wheelock as authority for the proposition it was cited to support in Cunningham v. Robison. Before said Constitutional Amendment, a proceeding in District Court purportedly authorized by statute, if any, to reinstate an annulled liquor license, would, if sustained, have been necessarily sustained only as a special proceeding and not an action. Yet in Lane v. Chappell, Tex.Civ.App., 159 S.W. 905, 906, it was held that it was "a civil action or cause" and that "Being a 'cause of action,' as that term is used in the section of the Constitution * * * the procedure provided for the trial of civil actions in the district court would be applicable, and it was not necessary for the Legislature, in authorizing the suit, to make any special provision as to the method of procedure in such suit." Prior to said amendment a district court had no jurisdiction of a proceeding to revoke a physician's license or the license of an attorney. Provisions therefor, if any, were necessarily provisions for special proceedings. But after the amendment it was held in Berry v. State, Tex.Civ.App., 135 S.W. 631, 633, writ refused, that "The action is of a civil

nature, and if appellant objected to the jurisdiction of his person [in Bexar County], he should have interposed his plea of privilege. In the case of Scott v. State, 86 Tex. 321, 24 S.W. 789, the Supreme Court held that a proceeding to revoke the license of an attorney was *a civil action,* and that case is similar in its nature to this. Being a *civil case,* the rules that apply to *civil causes* are applicable to it." (Italics ours.) The decision in Scott v. State, supra, as disclosed in the above quotation could not be sound, and still Brown v. Wheelock be authority to support Cunningham v. Robison. In Lane v. Hewgley, Tex.Civ.App., 156 S.W. 911, 913, was involved a statutory proceeding (to reinstate a forfeited liquor license) which prior to the Constitutional Amendment would have been a special proceeding but not an action, for the reasons already given. It was said: "This suit has been brought under the direct authority of the law, and being a *suit,* and necessarily a *civil suit* * * * this court clearly has jurisdiction of it, because it has appellate jurisdiction of all *civil cases* appealed from the district court." (Italics ours.) The Court further said: "A *civil case* is a proceeding in a court of justice, in which the plaintiff demands, as against the defendant, the enforcement or protection of a private right or the prevention or redress of a private wrong. This is undoubtedly *a civil action,* and, as such, appealable to this court." (Italics ours.)

In Gilmore v. Waples, 108 Tex. 167, 188 S.W. 1037, 1040 the Supreme Court announced the important conclusion and reaffirmed it in Love v. Wilcox, 119 Tex. 256, 28 S.W.2d 515, to the effect that under the enlarged jurisdiction of the district court effected by said constitutional amendment what had theretofore been only political rights became, when provided for by Statute, *legal* rights and the proceeding for the enforcement of such a right was a *suit* or *action.* In the first case Chief Justice Phillips' opinion said: "The courts exist only to enforce the law. This includes the statute law." Regarding political parties, it was said that when "regulated by law, their action to the extent that it is so governed may be reviewed by the courts as the only means of giving effect to the sovereign law of the State. *In such case the inquiry is judicial* because made the duty of the courts; and the questions presented are likewise *judicial* because arising under the written law. * * * Rights arising under * * * [primary election laws] as is true in respect to all rights conferred by statute, are held to be *legal rights,* the exercise of which the courts will protect as a part of their duty to give effect to the written law of the land." (Italics ours.)

The above will suffice, I think, to show that Cunningham v. Robison was wrong, resulting most probably from oversight of the constitutional amendment or at any rate some misapprehension concerning it as now well settled by decisions of the Supreme Court.

Mingus v. Wadley was right as to the proceedings before the Industrial Board, but was in error, as I hope to be able to demonstrate, in failing to recognize that the subsequent proceeding in court was of a very different character. The proceeding before the Board is a special proceeding— the Board being, as held in Middleton v. Texas P. & L. Co., 108 Tex. 96, 185 S.W. 556, not a court, but only an administrative agency. The subsequent proceeding in court is not a special proceeding, but an action—a suit, case or cause involving legal rights in the determination of which the court exercises judicial power.

The Workmen's Compensation Law repealed some rights and remedies "derived from the common law", and substituted other rights and remedies, the subject of actions. The law may be read from first to last without finding any provision purporting to make any addition to the jurisdiction of the district court, or any other court for that matter. The Legislature was without power to limit any jurisdiction given by the Constitution to the district court. The Constitution empowered the Legislature to add to the jurisdiction of the district court as already seen, but it conferred no power to take away any granted by the Constitution. The question suggests itself: by what authority does a district court have jurisdiction of a compensation suit? The answer is that the Legislature created the cause of action in such a suit, and the Constitution had long before vested jurisdiction of all causes of action in the courts of this state—the district court having, in the language of the Constitution itself, "general original jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution". It was therefore unnecessary for the Legisla-

ture to make any provision for vesting jurisdiction of a compensation suit in any court. When the Legislature enacted the law from which rights of individuals sprang of a nature properly constituting the subject matter of suits or actions, jurisdiction of such suits or actions was already made by self operative provisions of the Constitution. The Legislature in making provision for the existence of such a cause of action, might have conditioned its existence, in effect, upon the filing of suit in a particular county as it did in authorizing causes of action for divorce. It did not purport to do so, however, but if it had that would not have affected the jurisdiction of any court, as was recognized and in effect declared as to a divorce suit in Aucutt v. Aucutt, 122 Tex. 518, 62 S.W.2d 77, 89 A.L.R. 1198. Ex parte Scott, Jr., 133 Tex. 1, 123 S.W.2d 306, 126 S.W.2d 525. These late cases are themselves a refutation of the basic idea in Mingus v. Wadley that because a cause of action owes its existence to statutory provision, said fact operates to restrict in some way a court of general jurisdiction to the exercise of only special and limited jurisdiction.

Unless I have overlooked it, the Workmen's Compensation Law, except in amendments designed to avoid effects of Mingus v. Wadley, does not mention any court, to say nothing of any particular kind of court. It authorizes suit, after prescribed notice, to be filed in the county where the injury occurred. In what court? It doesn't say. There are generally more than one court in a county. If in fact the proceeding *in court* is special, how does a county court have jurisdiction of some cases and district courts of others and justice courts of still others? There is one irrefutable answer, and that is that if these different courts may exercise jurisdiction of a compensation suit, the jurisdiction is that granted by the Constitution and general laws based upon the amount in controversy—a jurisdiction which existed since long prior to the 1891 amendment hereinbefore discussed. And why not? Isn't a suit for compensation one to enforce a pecuniary demand, entirely unlike a suit to remove the disabilities of minority, to contest an election, etc., which for the lack of jurisdiction in courts of such subject matter was the occasion of causes of action existing by statute ever becoming confused with special proceedings?

If a compensation suit in court is a special proceeding, by what authority can such a proceeding ever reach a court of civil appeals or the Supreme Court? The answer to this question ought to be decisive. One of these three alternatives is necessarily true: (1) There is some statutory provision affirmatively authorizing appeal and writs of error, or (2) said appellate courts have no jurisdiction, or (3) the proceeding is not special. There is no statute affirmatively declaring a right of appeal or writ of error in compensation suits. That such right exists has since Mingus v. Wadley been decided by the Supreme Court, and the decision based upon a ground which could not exist as to a special proceeding. In Lafield v. Maryland Casualty Co., 119 Tex. 466, 33 S.W.2d 187, such right of appeal was declared upon the ground that the proceeding in the trial court was a civil suit in the sense that the right of appeal exists as to civil suits. If a civil suit in that sense, by the very definition of the terms it is not a special proceeding.

This last cited case, although not mentioning the subject, is just as good authority supporting the right of trial by jury in such a case as the right of appeal and for the same reason—if the action be in fact a suit and the rights legal rights, then the right of jury trial exists by virtue of the Constitution, Art. 5, Sec. 10. In the early assault upon the validity of the law, it was contended that it was unconstitutional because it deprived a claimant of the right of trial by jury. The answer was in effect that no such right existed in a special proceeding such as that before the Board but that it was preserved in the right to litigate the issues in a suit, thus recognizing the fact overlooked in Mingus v. Wadley that while the proceeding before the Board was special, the proceeding by suit was addressed to the general jurisdiction of the court. Middleton v. Texas P. & L. Co., supra.

Believing that it has been demonstrated that the Workmen's Compensation Statute did not confer or attempt to confer upon any court jurisdiction of a compensation suit or limit or attempt to limit or qualify the already existing jurisdiction of any court, it may be next in order to consider the nature and effect of the provision for bringing such a suit "in the county where the injury occurred." The most obvious reason for the provision, was to specify the means and thereby recognize the right of a party to avoid the conclusive effect of a decision of the administrative

agency. It was a recognition of an existing right and not the grant of a theretofore non-existing right. Its purpose was to show the intention of the Legislature not to deprive a party of his right to a day in court, not to give him such right.

The direction that the suit be brought in the county where the injury occurred, not being either a grant or restriction of jurisdiction was necessarily a venue provision. Unlike in a cause of action for divorce, as already seen, the provision does not purport to condition or qualify the cause of action for compensation. But even if it did, as already seen, that would not make the provision one affecting jurisdiction, and not venue.

In Mingus v. Wadley, the familiar rule of liberal construction in favor of compensation claimants was mentioned as supporting the proposition that said provision was one for jurisdiction. In a compensation suit the claimant is the real plaintiff. The provision, if one for venue, is an exception to the general rule that suits shall be brought in the county of defendant's residence. The exceptions to that rule are for the benefit of plaintiffs. It is difficult, therefore, to see how it could have been thought that construing such provision as one for jurisdiction, rather than venue, was liberal to the compensation claimant.

Explanatory of the statement that the provision constituted an exception, such is the result of exception 30, R.S.1925, Art. 1995. Exception 30 is not as old as the origin of said Article 1995, which latter was Paschal's Digest, Art. 1423, R.S. 1879, Art. 1198, R.S.1895, Art. 1194, and R.S. 1911, Art. 1830. Said exception 30 first appeared as exception 23 in R.S.1879, Art. 1198. Exception 30 is as follows: "Special *venue.*—Whenever in any law authorizing or regulating any particular character of action [Workmen's Compensation Law?], the venue is expressly prescribed, the suit shall be commenced in the county to which *jurisdiction* may be so expressly given." (Italics ours.) Note the use of the word *jurisdiction* here as synonymous with *venue.* Note further that Article 1995, including exception 30, is on its face a venue statute. Is it reasonable to construe the subject of an express exception from a general venue provision as being, not a matter of venue, but of jurisdiction? What was the effect of exception 30? It should, of course, be so construed, if pos-

sible, as to have some effect. I can conceive of no effect its enactment had, unless it was to make certain that mere provisions for particular kinds of suits to be brought in particular counties, as for example, suits to recover workman's compensation, should, regardless of their mandatory purport, constitute exceptions to the general rule of venue.

It is of no importance, or at least of no controlling importance as distinguishing a provision involving jurisdiction from one of venue that the language is in its natural import mandatory rather than permissive. Exceptions 14, 17, 18, 19, 22, 29 and 30 are all alike in terms mandatory. But that does not mean that they limit the potential jurisdiction of any court. Supported by citation of a long list of cases, Tex.Jur. says: "But in cases in which it is provided that a suit 'must' be brought within a particular county—such as suits for the recovery of lands or damages thereto (R.S. Art. 1995—subd. 14)—the statute is mandatory * * * *but not in a jurisdictional sense;* if the defendant does not claim his privilege to be sued in the county where the land is situated the court can proceed to try the case and render judgment, the land being situated in Texas." (Italics ours.) 43 Tex.Jur. 710, Sec. 6.

Aside from the overwhelming force of the logic which seems to compel the construction of said provision as one for venue and not jurisdiction, reasons may be multiplied indefinitely, why it should be so construed if possible. If Mingus v. Wadley is right, then no compensation case is removable to a Federal Court in another county on the ground of diversity of citizenship. Yet under the holding that such a proceeding in court is a "civil suit", Federal Courts would be bound to hold that such a suit was so removable. Under Mingus v. Wadley even if in the county where the accident occurred "there exists * * * so great a prejudice against him that he cannot obtain a fair and impartial trial", or there is "a combination against him instigated by influential persons, by reason of which he cannot expect a fair and impartial trial", a party cannot have a change of venue as provided in R.S.1925, art. 2170.

It is a matter of common knowledge that industrial accidents may cause injury in a place where by reason of uncertain county boundary lines one man's guess is as good as another as to which of two adjoin-

ing counties is the one in which the injury occurred. Courts, it seems to me, should pause long before holding, when such a construction is unnecessary, a fact to be jurisdictional which may well be so uncertain as to require litigation to determine it.

It is a most remarkable fact which the decisions of this state, I think, show to be true, that in a compensation suit every presumption obtains as in any other suit in a court of general jurisdiction, except one—that the court has jurisdiction. The sole reason for any such exception is Mingus v. Wadley; and that reason is no sounder than the proposition that a compensation suit, in a district court, is not in reality a suit or action, but a special proceeding like one before an administrative agency, which possesses no judicial power. There are dozens of decisions by and/or having the approval of the Supreme Court since Mingus v. Wadley, as shown, which are clearly wrong if that proposition is sound.

As before mentioned the Legislature in an effort to parry the harsh effects of Mingus v. Wadley, has enacted V. A. C. S., Arts. 8307a and 8307b. The former contains the provision reading as follows: "however, in the event such suit is brought in any county other than the county where the injury occurred, the Court in which same is filed shall upon ascertaining that it does not have jurisdiction to render judgment upon the merits, transfer the case to the proper Court in the county where the injury occurred." Under the strictness applicable to special proceedings, such limited and special power to transfer was conditioned upon the suit having been brought in the wrong county. In fact, the suit was brought in the right county under any view. Whence exists, therefore, any power to make the transfer? The District Court of Young County in any view once had jurisdiction of the case. Will it be held that that court had no jurisdiction to make an erroneous transfer of the case to Stephens County? May one who, having expressly consented and agreed that a court undoubtedly having jurisdiction of a suit take some wrong action therein, then have such action declared void in order to save him harmless from such wrong action?

Finally, will anyone be heard to say that although Mingus v. Wadley was wrong, it has been in effect validated by the amendatory statutes aforesaid showing the legislative intention that it be right? I cannot enlarge upon the good reasons, why in my opinion such a contention would be not only unsound, but absurd, but will close with the suggestion that the Legislative intention which it is the primary function of courts to determine is not an intention which the Legislature had, but failed to express, but the intention expressed in the act. Therefore, if Mingus v. Wadley was in error in ascertaining that intention, the later act of the Legislature shows at most a wrong construction of its former act, induced by the court's wrong construction. A Legislative construction in one act of a former act, would certainly not be binding upon the court's construction of such former act, if upon reconsideration the former construction was wrong.

The expression herein of my views has been motivated not so much by the purpose to show that my colleagues should regard Mingus v. Wadley as no longer authoritative, but frankly with the hope, born of the wish that the Supreme Court if petitioned to do so, should take jurisdiction of this case and expressly overrule its said former decision.